F. G. DAVIS, Appellant, *v.* CHESTER H. KRUM, Respondent.

May 30, 1882.

1. A principal who, after notice, takes the proceeds of an unauthorized agreement made by his agent, thus ratifies the agent's act and adopts the contract.

2. An intermixture of goods which is neither wilful nor negligent will not entitle him whose goods have been, by the act of another, thus mingled, to take the whole.

3. A payment, whether in goods or in money, made by mistake of fact of both parties, may be recovered back by the payer, if shown to be in fact not due.

4. Where the payer parts with his right to claim, in kind, an excess of goods paid by mistake, upon the payee's promise to give him the proceeds thereof, this promise is a sufficient consideration, and also estops the payee to set up want of consideration.

5. An administrator who, under a mistake of fact, receives from a debtor of the estate more than is due, and applies the whole as assets of the estate, is individually responsible to the debtor for the excess.

6. The debtor, in such a case, has an action at law against the administrator, and is not compelled to proceed in equity against the estate.

7. If the agreed facts warrant a final judgment on appeal, the cause will not be remanded for the purpose of letting in a counter-claim which can be recovered upon in a separate action.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Reversed, and judgment.*

SILAS B. JONES, for the appellant: A principal who knowingly receives the fruits of an unauthorized act of his agent, ratifies the act, and assumes the burdens which attach to it. — *Watson* v. *Bigelow*, 47 Mo. 413 ; *Norton* v. *Bull*, 43 Mo. 113. Where one lose money which, *ex aequo et bono*, belongs to another, the law implies a promise to pay it upon which an action may be maintained ; and the former will not be heard to deny the promise. — *Robbins* v. *Insurance Co.*, 12 Mo. 380 ; *Mcgoffin* v. *Muldrow*, 12 Mo. 512 ; *Kanada* v. *North*, 14 Mo. 615. One who has paid money through a mistake of fact is entitled to recover it back. — *Koontz* v. *Bank*, 51 Mo. 275 ; *Third National Bank* v. *Allen*, 59 Mo. 310. The action was properly brought against the respondent individually. — *Cronan* v. *Cotting*, 99 Mass. 334 ; *Ashley* v. *Ashley*, 7 Barn. & Cress. 444.

WALTER B. DOUGLASS, for the respondent : If one voluntarily mixes his goods with those of another, they become the property of the latter. — *Ward* v. *Ayre*, Cro. Jac. 366 ; *Beach* v. *Schmultz*, 20 Ill. 185 ; *Bryant* v. *Ware*, 30 Me. 295 ; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 108 ; *Franklin* v. *Gumersell*, 9 Mo. App. 84. The act of an agent beyond the scope of his authority does not bind his principal. — *Flanagan* v. *Alexander*, 50 Mo. 50.

THOMPSON, J., delivered the opinion to the court.

On the 17th of January last, we delivered an opinion in this case reversing the judgment of the circuit court, and entering judgment in this court for the plaintiff. We stated in the opinion that the respondent had not furnished us with a brief, and that we were therefore left to conjecture as to the grounds on which the case had been decided in the circuit court. It seems that the respondent's counsel had filed a brief with the clerk, but copies of it had not been sent into the judges' rooms, nor was there any memorandum on the record to show that any such brief had been filed. When the respondent's counsel made known this fact to us,

we set aside the judgment which we had rendered, reopened the cause, and gave the respondent leave to file a supplemental brief. We have now reconsidered the case, with the aid of the respondent's original and supplemental briefs; and our conclusion is, that we must enter the same judgment which we then directed. As the briefs of the respondent have directed our attention to some questions not considered in our former opinion, we shall cancel that opinion, and proceed to consider the case as though it had not been rendered.

This case was tried in the court below, on the following agreed statement of facts: "It is agreed by the parties herein that this cause may be tried by the court without a jury, on the following statement of facts which, for the purpose of the trial of this case in this court, are agreed to as follows, to wit: —

"That the defendant Krum is, and was at the times hereinafter mentioned, the administrator of the estate of Daniel W. Bell, deceased; that on the 15th of April, 1878, and for some time prior thereto, F. G. Davis & Bro., of Henry County, Tennessee, were indebted to the estate of said Bell in the sum of $1,226.23; that said Krum, as administrator as aforesaid, authorized one John A. Cole, on behalf of the estate of said Bell, to accept, at Fulton, Kentucky, of said Davis & Bro., peas and wheat, at such prices as the said Cole and Davis & Bro. might agree upon, in full payment, satisfaction, and discharge of said indebtedness of $1,226.23, and to ship said peas and wheat to New Orleans, Louisiana, for sale on account of the estate of the said Bell; that the said Cole agreed with Davis & Bro. to accept peas at the rate of $1.25 per bushel, and wheat at the rate of $1.10 per bushel, in payment and satisfaction of said debt; that in pursuance of said agreement under the direction of said Cole, Davis & Bro. delivered to the agent of the railroad at Fulton, Kentucky, for account of D. W. Bell's estate, a quantity of peas and wheat, which the said Cole caused to be shipped to Newman

& Jones, New Orleans, for sale for account estate of D. W. Bell; that said peas and wheat were not measured as they were from time to time delivered to the railroad at Fulton, by Davis & Bro.; that as soon as Davis & Bro. had completed the delivery of said peas and wheat to the railroad, but after they had all been shipped from Fulton, and a part had been sold by said Newman & Jones, the said Cole and Davis & Bro. met at Fulton, and computed the amount of peas and wheat delivered by Davis & Bro. to the railroad as aforesaid, and ascertained thereby that at the price aforesaid upon which said Cole had agreed to take said peas and wheat, Davis & Bro. had delivered to the railroad peas and wheat of the value of $1,542.20, being, according to the price aforesaid, $315.97 in value more than necessary to pay the said debt of $1,226.23; that neither Cole nor Davis & Bro. were aware, until all said peas and wheat had been shipped from Fulton, and until the computation above mentioned was made, that Davis & Bro. had delivered to the railroad more peas and wheat then necessary to pay the debt aforesaid, at the price aforesaid, nor was it the intention of Davis & Bro. to deliver, nor of Cole to receive, more peas and wheat than necessary to pay said debt at the price aforesaid; that at the time Davis & Bro. and Cole computed the amount of said produce as aforesaid, Cole executed and delivered to Davis & Bro. a paper, which is hereto attached, marked 'Exhibit A,' and made a part of this agreement; that the defendant Krum had not authorized Cole to execute said paper, nor to receive more produce than necessary to pay said debt at the price at which he should agree with Davis & Bro. to take it, nor was the said Krum aware, until more than thirty days after said paper was executed, and until a part of the produce had been sold and he had received the proceeds thereof, of the existence of said paper, or that more produce had been shipped to New Orleans than necessary to pay said debt at the price at which Cole had agreed to take it; that all the peas and wheat were sold in

New Orleans by Newman & Jones for account of D. W. Bell's estate, and the net proceeds, amounting to $496.23, were received by defendant Krum in his capacity as administrator, and credited by him to said estate, after he had notice of the facts set forth ; that about the 21st of May, 1878, the plaintiff, F. G. Davis, who had then become, and is now, solely interested in this matter by virtue of agreement with the other member of said firm of Davis & Bro., caused the paper hereto attached, marked 'Exhibit A,' to be presented to the defendant Krum, and demanded his alleged part of the proceeds of said produce ; that, at the time last mentioned, only a part of said produce had been sold ; that, on the 25th of June, 1878, all of said produce had been sold, and the defendant had received all the net proceeds as aforesaid ; that at the time last aforesaid, said Davis again demanded of said Krum his alleged part of the said net proceeds ; that defendant has always refused to pay said Davis any of said proceeds, and from the time of their receipt to this time, has refused to admit that said plaintiff, or Davis & Bro., have any interest whatever in said net proceeds.''

Exhibit A, referred to in the following statement, was as follows —

" Fulton, Kentucky, April 25, 1878. Statement of settlement with Messrs. F. G. Davis &. Bro. by John A. Cole, agent for the estate of Daniel W. Bell : —

| 1878. | CRS. | |
|---|---|---|
| April 15. By 1,019 bushels peas, at $1.25 . . . | $1,273 | 75 |
| By 212½ bushels wheat, at $1.10 . . . | 233 | 75 |
| Produce delivered, total Crs. . . . . . . . . . | $1,507 | 50 |
| Cr. By order on E. B. Edding . . . . . . . . | 31 | 50 |
| Cr. By cash paid by F. G. Davis for hauling, to J. Frields, to Fulton, Ky. . . . . . . . . . . | 3 | 20 |
| | $1,542 | 20 |

DR.

"F. G. Davis & Bro., Dr., to estate D. W. Bell.

| | | |
|---|---|---|
| To third note, dated September 15, 1877, due ninety days after date. . . . . . . . . . . . | $452 | 00 |
| To interest on same for forty-five days, at ten per cent | 5 | 90 |
| To fourth note, dated September 15, 1877, due one hundred and twenty days after date . . . . . | 4 | 50 |
| To interest on same for fifteen days, at ten per cent | 1 | 95 |
| To account on books due December 31, 1877 . . | 314 | 81 |
| To interest on same for thirty-one days, at six per cent | 1 | 57 |
| Total indebtedness to estate D. W. Bell . . | $1,226 | 23 |

"This certifies that Messrs. F. G. Davis & Bro. have an interest in the above produce, and entitled thereto when sold; they sharing their *pro rata* of all expenses in same.

"JOHN A. COLE, Agent for estate D. W. Bell."

The appellant asked declarations of law to the effect that, on the agreed facts, he was entitled to recover; and that, the net proceeds of the peas and wheat should be divided between him and respondent in the proportion that $315.97 bears to $1,226.23. The court refused appellant's declaration of law, and found for respondent. Appellant filed his motion for a new trial, which was overruled, and he has brought the case to this court by appeal.

We think this case must be determined upon grounds which are presented with singular clearness in the appellant's brief. We do not seek to undervalue the arguments which are ably presented by the counsel for the respondent in favor of his view of the case; but we cannot escape the conclusion that these arguments are nothing more than an attempt to prove that if A. gets possession of B.'s property through a common mistake of his own agent and B., A. has a right to sell it and to keep the proceeds of it. This is not the law, and never has been the law.

This is not a case for the application of the common-law rule with regard to the confusion of goods. All the cases

and statements of text-writers, where this rule is stated, clearly embody the idea that the act of intermingling the goods must have been *wrongful* on the part of the party who claims the right to separate them. The idea is not, that one man should be allowed to keep the goods of another which have fallen into his hands by accident, but that, if one man wrongfully thrusts his goods among the goods of another, the latter shall be allowed to claim and keep the whole mass; otherwise, it is supposed the former would be allowed to derive some advantage from his own wrong. This will clearly appear from the authorities cited by the respondent in his brief. In the old case of *Ward* v. *Ayre* (Cro. Jac. 366; *s. c.* 2 Bulstr. 325), where this rule was declared, the court spoke of the act of the plaintiff as " his intermeddling " and " his own wrong." Blackstone, in expressing the rule, says : " If one *wilfully* intermixes his money, corn, or hay, with that of another man," etc. 2 Bla. Comm. 405. In a case in Maine, the predicate of the rule is said to be, that " such intermixture be *wilfully* or *negligently* effected." *Bryant* v. *Ware*, 30 Me. 295. In *Franklin* v. *Gumersell* (9 Mo. App. 84, 90), the distinction between a wrongful and innocent intermingling of one's goods with those of another, is very clearly stated.

Here, the agreed statement does not show that the excess of peas and wheat which was delivered to the railroad for shipment was delivered to it through any wrongful, intentional, or even negligent act of the plaintiff's assignors ; but it is just as reasonable to infer that if there was any wrong or negligence in the premises, it was the wrong or negligence of the defendant's agent. This case is, therefore, not within the rule as to the confusion of goods.

There is another rule, however, which we think does govern this case ; and that is the rule which allows a person to recover back money which he has paid to another through a mistake of both parties. The agreed statement of facts does not disclose how it came that the amount which the

peas and wheat realized in New Orleans was so small a sum in comparison with that at which the defendant's agent, Cole, had agreed to receive them in settlement of the debt of Davis & Bro., to the estate of which the defendant was administrator. We get a suggestion through one of the briefs, that it may have been because they were damaged in shipment. In the absence of any disclosure in the record upon this point, we have no warrant for inferring that it was through any fault of the plaintiff. We cannot see, then, why the plaintiff does not stand towards the defendant in the position of any other debtor who has paid to his creditors, through a mistake of both parties, more money than, at the time of payment, he stood liable to pay ; for it can make no difference as to the operation of this principle, whether the payment was made in money, or in some other commodity at an agreed price. Money voluntarily paid, with full knowledge of all the facts, cannot be recovered back ( *Claflin* v. *McDonough*, 33 Mo. 412) ; but money paid by mutual mistake could be recovered in an action of *assumpsit* at common law, on an implied promise to repay it. 2 Greenl. on Ev., sect. 117. See *Magoffin* v. *Muldrow*, 12 Mo. 512. The form of the action has been rendered immaterial by our code of procedure. The substance of the action remains the same as the count in *assumpsit* for money had and received. " The count for money had and received," says Prof. Greenleaf, " which, in its spirit and objects, has been likened to a bill in equity, may in general be proved by any legal evidence, showing that the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff." 2 Greenl. on Ev., sect. 117. Our courts have frequently acted upon the doctrine that money so paid may be recovered back. *Third National Bank* v. *Allen*, 59 Mo. 310 ; *McDonald* v. *Lynch*, 59 Mo. 350 ; *Koontz* v. *Central National Bank*, 51 Mo. 275 ; *Budd* v. *Eyermann*, 10 Mo. App. 437. And if money has thus been

paid an agent, and the agent has delivered it to his principal, it may be recovered of the principal. *Harris* v. *Board of Education*, 3 Mo. App. 570. It is true that, in order to entitle one to recover money paid by mistake, it must appear that the sum paid was not, in fact, due. Thus, although a debtor pays $280 to take up a note of $230, he cannot recover the excess without showing that, notwithstanding the note, the excess was not, in fact due ; for it may have been due on some other account. *Foster* v. *Kirby*, 31 Mo. 496.

But there is in this case the further fact that the defendant's agent, Cole, *agreed*, in effect, to pay to the plaintiff what the excess of the peas and wheat produced, above the expense of selling it. It is true, he had no express authority from the defendant to make such an agreement; but the defendant is not, for that reason, entitled to repudiate it, and at the same time keep the fruits of it. And he must be taken to have done this, since the plaintiff, by entering into the agreement with Cole, would seem to have parted with the right which he had of following the produce to New Orleans and reclaiming the excess from the defendant's bailee. It is well settled that a principal, by keeping the fruits of an unauthorized act of his agent, after knowledge of the fact, ratifies the act and makes it his own. *Norton* v. *Bull*, 43 Mo. 113 ; *Watson* v. *Bigelow*, 47 Mo. 413. Besides, the defendant received a portion of the proceeds of the sale of the produce, after knowledge that this agreement had been made by his agent ; and this was an affirmative act of ratification.

It is argued that this was no contract, — that there was no consideration to support it. The fact that the plaintiff's assignors waived their right to reclaim in kind the excess of grain which had been delivered, furnishes a good consideration for the agreement, and makes it a contract. It also furnishes a reason why it should operate as an estoppel against the defendant; for, after the plaintiff's assignors

had parted with their right to claim the excess of grain in kind because the defendant's agent had agreed that they should have the proceeds of the sale of it, it would be inequitable to permit the defendant to say that this was no contract because there was no consideration to support it.

The action was properly brought against the defendant individually, and not in his representative capacity. An administrator who receives from a ~~creditor~~ of the estate a greater sum than is due, and applies the whole sum as assets of the estate, is personally responsible for the excess above what was actually due the estate. Whether the plaintiff might maintain a bill in equity to recover it from the estate, in the event of the insolvency of the administrator, need not be inquired into, for that is not the case here; it is clear that he can recover it at law from the administrator individually (*Ashby* v. *Ashby*, 7 Barn. & Cress. 444; *Cronan* v. *Cotting*, 99 Mass. 334); and a party who has a clear right of action at law for money which another has received under such circumstances that, *ex æquo et bono*, he ought to restore it, is not to be driven into equity in search of his money as a trust-fund.

It is unnecessary to remand the cause, though it is now suggested that we ought to do so, in order to let in any set-off or counter-claim which the defendant may have. If he has a good counter-claim, it ought to have been pleaded. If he has a good set-off, it may be made the subject of a separate action. The agreed facts enable us to enter judgment here. From those facts it appears that the amount which the plaintiff was entitled to receive from the defendant, on the 25th of June, 1878, was $101.66. The judgment of the circuit court will be reversed, and judgment will be entered in this court for the amount, which will be produced by computing interest on this sum at six per cent per annum from that date to the date of the judgment, and adding the interest to the principal. It is so ordered. All the judges concur.