## SUESS et ux. v. IMPERIAL LIFE INSURANCE COMPANY, Appellant.

### Division One, February 22, 1906.

1. **INSURANCE: Contract: Waiver: Course of Business: Constitutional.** Under a plea of performance of an insurance policy requiring the payment of premiums to be made at noon on specified dates, the insured can show that there had been such a course of dealing between the parties as amounted to a waiver by the company in that particular. And no constitutional right of the company is violated by admitting such evidence.

2. ————: ————: ————: ————: **Appellate Jurisdiction.** However, where the suit is for a recovery of $266.65 in premiums paid, on the ground that the contract was wrongfully cancelled for failure to pay a certain premium at the noon hour of the stipulated day, the point, presented in the trial court, in objections to the evidence, in instructions asked and in the motion for new trial, that the proof of waiver was violative of the constitutional provisions forbidding the depriving of one of his property without due process of law, involves a constitutional question, and the appeal is to the Supreme Court.

3. ——: ——: ——: Evidence. By the terms of the policy, the premiums were payable at the company's home office in Detroit at noon on the 15th day of April and October. The insured lived at Miami Station, on the Wabash railroad, in Carroll county, Missouri, and mailed, by check or express money order, their semi-annual premium, on the regular east-bound train at 10:30 a. m., on April 14th and October 14th, in 1890 and 1891, and on April 14th, 1892, and this last payment, received by the company on April 16th, was rejected as having arrived too late. One letter from the company showed that defendant had received the premium on the 15th. The other letters, acknowledging receipt, were dated the 16th. *Held*, that this evidence was no evidence at all that the company had waived its rights to require the payment to be made according to the terms of the contract, and a finding by the trial court, sitting as a jury, that the company's course of conduct amounted to a waiver, cannot be permitted to stand. *Held*, also, that the mailing of the premiums on the 14th, was not, of itself, any evidence that the company had established a rule of conduct of accepting the premiums if they arrived after noon on the 15th.

4. **WAIVER:** Course of Dealing. One transaction cannot make a custom or establish a course of dealing or vary the positive terms of a written contract.

Transferred from Kansas City Court of Appeals.

REVERSED.

*Conkling & Rea* for appellant.

(1) By applying the judicial rule, manufactured exclusively for insurance cases, of permitting proof of waiver, although not pleaded, defendant was denied the equal protection of the laws as guaranteed by the Federal Constitution. The announcement of this rule by a Missouri court is always accompained by an apology. As declared by Judge ELLISON, "It seems to me to be a reflection on the administration of the law, that without pretense of cause or excuse, there should be one rule of practice applied to insurance cases, and a directly opposite rule to all other cases," Murphy v. Ins. Co., 70 Mo. App. 85. The constitutionality of this rule is an open question. It has been suggested but

never directly passed upon. James v. Life Ass'n, 148 Mo. 18. It is certain that a statute built on that plan would be held in violation of the fourteenth amendment. State v. Hayes, 81 Mo. 574. And that amendment is also prohibitory of State action or judicial construction. Civil Rights Cases, 109 U. S. 3. This Missouri rule of waiver in insurance cases singles out a certain class and applies to them a rule not applied against individuals or other corporations. In the suits to which they are parties they are discriminated against, and are not treated as others. They do not stand equal before the law. They do not receive its equal protection. Paddock v. Railroad, 155 Mo. 538; In re Flukes, 157 Mo. 125; Railroad v. Ellis, 165 U. S. 155. (2) There was no evidence whatever in this case of waiver of timely payment of premiums, and hence the finding for plaintiffs was erroneous. Plaintiff says he mailed each of the three prior premiums at 10:30 a. m. of the 14th — twenty-five hours before they were due. Does that prove they were received out of time? Of course not. Counsel will hardly ask this court to assume, without evidence, that it takes more than one day and night to carry the mails even from Kansas City to Detriot. A court cannot take judicial notice of the time of the arrival or departure of trains. Bishop v. Life Ins. Co., 85 Mo. App. 302. The remaining evidence consists only of two letters by defendant acknowledging receipt of these premiums. The first is dated October 16, 1890. Nothing in this letter indicates that the premium was received one minute after noon of the 15th. The next letter is dated April 15, 1891. Surely this letter does not help to prove waiver. On the contrary, it proves absolute, literal compliance with the contract. The foregoing letters are all the evidence upon which the theory of waiver can be possibly based. One of them disproves waiver; the other does not prove anything. Now, even concede, for the sake of the argument, that the letter of October 16, 1890, shows the acceptance of a belated payment.

How does that help plaintiff? One swallow does not make a summer. Or, in the language of the Supreme Court, "One act of waiving a forfeiture is not sufficient to constitute a course of conduct." James v. Life Ass'n, 148 Mo. 2.

*Jas. McPhetridge, Russell Kneisley* and *Busby & Busby* for respondents.

(1) Appellant contends that the court, by applying the judicial rule of permitting proof of waiver, although not pleaded, denied appellant the equal protection of the laws as guaranteed by the Federal Constitution. This question has been recently passed on adversely to appellant by the Supreme Court of this State. Andrus v. Ins. Ass'n, 168 Mo. 162. (2) There was not only some evidence of waiver, sufficient to support the finding for respondent, but the finding and judgment of the court was amply supported upon one or both of two grounds, namely, that appellant had waived the prompt payment of premiums by the custom and course of dealing established between the parties in relation to the transmission of premiums; and also by the custom of appellant to receive over-due premiums. It appears that appellant had its home office at Detroit, Michigan, and respondent resided at the village of Miami Station; that after paying the first premium to appellant's agent at Kansas City, the respondent was directed by appellant to remit all subsequent premiums to the home office at Detroit, Michigan, and that respondent pursuant to this direction afterwards remitted four premiums direct to the home office by mailing an express money order for the amount at Miami Station, at 10:30 a. m. of the day prior to due date on an east-bound passenger train, all of which premiums were received by appellant without objection to the time or manner of remittance. There can be no question that respondent had been led to feel perfectly se-

cure in mailing the premium due April 15, 1892, in the same time and manner that the other premiums had been remitted. Bacon on Ben. Soc. and Life Ins. (3 Ed.), p. 1107; 16 Am. and Eng. Ency. Law (2 Ed.), 934; Andrus v. Ins. Ass'n, 168 Mo. 165; Suess v. Ins. Co., 86 Mo. App. 12. In relation to the other ground of waiver, that is, the custom of appellant to receive overdue premiums, the case is equally as strong, and the finding of the court was amply justified also on this ground. It is undisputed that the five premiums including the one due April 15, 1892, were remitted in exactly the same time and manner. While only three of the receipts for these premiums are in evidence, yet it appears that two out of the three were not received by appellant until the day after due, and the other one dated on the 15th day of the month does not necessarily prove that the premium was received on due date, since appellant doubtless dated the receipt back according to the well-known practice in such matters. Respondent testified that he mailed all five of the premiums at exactly the same time and the presumption is, in the absence of countervailing evidence, that all the premiums reached their destination in the same length of time. And in addition appellant took the deposition of its secretary, Olliver, at the home office within reach of the records and carefully avoided any mention of the dates of receiving prior premiums, when the dates of receiving these premiums was the important issue in the case. 22 Am. and Eng. Ency. Law (2 Ed.), 1238, 1261; Baldwin v. Whitcomb, 71 Mo. 658; James v. Life Ass'n, 148 Mo. 15; Davis v. Railroad, 46 Mo. App. 180; Cohn v. Kansas City, 108 Mo. 387.

VALLIANT, J.—Plaintiffs who are husband and wife sue to recover premiums paid by the husband to defendant on a life insurance policy issued by defendant on the life of the husband for the benefit of the wife, on the ground, as alleged in the petition, that the de-

fendant had wrongfully declared the policy lapsed as for non-payment of premium.

The petition states that the policy was issued on the 15th day of October, 1889, for a period of six months, renewable at the end of every six months thereafter during the life of the husband by payment of the stipulated premium; that these semi-annual premiums to renew were to be paid on or before 12 o'clock noon, April 15th and October 15th of each year; then the petition says: "Plaintiffs further state that on the day said contract of insurance was entered into and by 12 o'clock noon of the last day of every six months thereafter he duly paid said premium to the defendant according to the terms of said contract;" that he tendered according to the terms of the contract the premium due on April 15, 1892, but defendant refused it on the ground that it had not been paid in time and declared the policy ended.

The answer admits the terms of the policy as pleaded in the petition, sets out certain other clauses, in one of which it is stipulated that the premium is to be paid on or before 12 o'clock noon of the last day of the expiring six months and unless paid by that hour the policy is to cease and determine, and the answer states that the plaintiffs failed to pay the premium due April 15, 1892, by the time required. Another clause in the policy is pleaded in the answer whereby the insured is given 60 days after his failure to pay the renewal premium in which to revive the insurance by furnishing a certificate of good health and payment of the past premium, and the answer avers that plaintiffs never made any offer to comply with the terms there given.

The reply was a general denial.

The cause was tried by the court—jury waived. There was a finding and judgment for the plaintiff for $226.65, from which defendant applied for an appeal to this court, but the court granted the appeal to the Kansas City Court of Appeals, which court when it

came to look into the record found that there was a constitutional question involved, and for that reason sent the case here.

I. The petition states that the plaintiffs paid the former premiums according to the terms of the contract and tendered the one due 12 o'clock m., April 15, 1892, also, in accordance with the terms of the contract and upon that statement asks judgment; defendant denied that the last-mentioned premium was tendered within the time specified in the contract. Over the defendant's objection plaintiffs were allowed to introduce evidence tending to prove a course of business conduct indicating a waiver by the defendant of the prompt payment by the day and hour named, and the court found from that evidence that there had been such a course of dealing between the parties as amounted to a waiver by defendant in that particular and that although the premium due April 15, 1892, was not tendered within the specified time, yet it was mailed to defendant within the time in which the former premiums had been mailed and on that finding gave judgment for the plaintiff.

Defendant contends that, whereas it is a rule of practice and pleading in this State that a party suing for a breach of a contract with which he asserts in his pleading he, on his part, has fully complied, cannot be allowed to recover as on a waiver of terms of the contract unless he has pleaded the waiver, to make an exception to that rule in a suit against an insurance company is to violate section 30 of article 2 of our State Constitution, which forbids the depriving of any one of his property without due process of law, and the 14th amendment of our Federal Constitution, which forbids the denying of any one equal protection of the law. That point was well preserved in the trial court, in objection to the evidence, in an instruction asked and in the motion for a new trial. It could not have been made in this case any sooner than it was.

The Court of Appeals, therefore, did right in sending the case here.

The constitutional questions now presented by appellant have been heretofore and so recently considered and decided by this court that we deem it unnecessary to say anything more on the subject. Our views are fully expressed in James v. Life Association, 148 Mo. 10, and Andrus v. Ins. Ass'n, 168 Mo. 161, and in the former decisions of this court cited in those two decisions. There was no constitutional right violated by the admission of that evidence.

II.   This cause has been long pending in court, it was instituted to the March term, 1893, there have been three trials, and this is the third appeal.

In the first trial in 1893 there was a judgment for defendant, and plaintiffs appealed. The appeal went to the Kansas City Court of Appeals where the judgment was reversed and the cause remanded. [Suess v. Life Ins. Co., 64 Mo. App. 1.] There was no question of waiver in the case at that time. The court said, l. c. 5: "There was evidence in plaintiff's behalf tending to show that he duly paid the premiums for several years at the end of each six months' period up to and including April 15, 1892, when, on the latter date, the defendant without cause refused to receive the premium due for the then ensuing six months, but wrongfully declared said policy void and of no further effect." And the court also said, l. c. 10: "There was no evidence offered as to any agreement to waive any rights, nor as to defendant's deceiving plaintiff by a course of conduct. The plaintiff made no such suggestion at the trial." The judgment was reversed for errors in refusing and giving instructions, chiefly those relating to the measure of damages.

On the second trial there was again a verdict for the defendant and plaintiff appealed. [Suess v. Life Ins. Co., 86 Mo. App. 10.] At the second trial the plain-

tiffs tried their case, not on the theory as before, that they had paid their premiums according to contract, but on the theory that defendant by its course of dealing had authorized plaintiffs to believe that the payment made as this was would be acceptable. The evidence on that point in that trial was substantially the same as it is in the record now before us; the judgment was reversed on account of error in refusing an instruction asked by the plaintiff covering the waiver theory.

The evidence in the record before us on that point is substantially as follows:

Suess testified that he took out the policy October 15, 1889, and paid the first premium to the agent of the defendant in Kansas City. Afterwards he received notice from the company "to send all remittances after that to Detroit, Michigan; that was the home office of the defendant company." Plaintiffs lived at Miami, a station on the Wabash railroad in Carroll county; after receiving notice to remit to the home office at Detroit, plaintiffs mailed the premiums as follows: "I mailed them on the 14th of April and the 14th of October, 1890, and 1891; mailed them to the company, mailed all the payments at Miami station; that is, the premium payments I made in 1890 were forwarded on 14th of April and 14th of October, and in 1891 the same way. The premium that was due April 15, 1892, I mailed the same way, mailed it on the regular Wabash mail train going east at 10:30 in the day on April 14, 1892." Plaintiff introduced in evidence three letters of defendant, all dated at Detroit, Michigan, one October 16, 1890, acknowledging receipt of plaintiff's letter of October 14th inclosing check to pay premium due October 15th; the next letter was dated April 15th, acknowledging receipt of letter of date not stated, enclosing express order to pay premium due that day. The third letter, dated April 16, 1892, returning the check offered for the premium due April 15th, declining to receive it on the ground that it came too late.

The foregoing is all the evidence adduced by plaintiffs to support their theory that the defendant had waived its right to require the payment to be made according to contract, and when sifted to the grain it is no evidence at all of that fact.

The only direction that the defendant gave was to make the remittances to the home office at Detroit. Defendant did not undertake to direct or advise by what means, or how or when the remittances should be made, and as long as the premiums reached the defendant in the time limited in the contract, it had no right to object to the plaintiffs choosing their own agent through which to forward the premiums and their own time for doing so. The inference might be drawn from the evidence that a letter leaving Miami station at 10:30 a. m. on the 14th would, if there was no delay, be delivered to defendant before 12 o'clock on the 15th and as long as the defendant received the premium in due time it had no right to complain that the letter was not mailed at an earlier date. If defendant had undertaken to advise the plaintiffs that it was not good business judgment for them to postpone mailing their letters to the very last day and hour after which it was possible for the delivery to be made in time, plaintiffs might with propriety have told defendant to mind its own business. It may be presumed that the plaintiffs examined the railroad time tables and satisfied themselves that a letter mailed at Miami at 10:30 a. m. on the 14th would in due course reach Detroit on the morning of the next day in time to be delivered before 12 m., and that they adopted the 14th for that reason. But if so, the defendant was not consulted on that subject and neither expressly nor impliedly agreed that a mailing of a letter on the 14th containing a check for the premium should be regarded the same as a payment of the premium by 12 o'clock on the 15th. It was no concern of defendant when the plaintiffs mailed their letters so long as the premiums reached it by the time speci-

fied.  Plaintiffs in choosing the mail chose their own agent and in choosing the day chose their own time, and if they held the premium back until the last possible time in which the mail, without accident or delay, could deliver it, they took the risk of whatever accident or delay might occur.

The defendant's letter of October 16, 1890, does not say that plaintiffs' letter enclosing the check was received that day, and no such inference is to be drawn from it.  The answering of a letter on the very day it is received is not such an invariable custom as to justify such an inference.  Besides, if it should be conceded that the remittance mentioned in that letter did not reach the defendant until the 16th, that is only one transaction, and shows only one premium received after the time specified in the contract.  One transaction cannot make a custom or establish a course of dealing to vary the positive terms of a written contract. The next letter acknowledging the receipt of the premium due April 15, 1891, is dated April 15, 1891. We have no right to infer, therefore, that any of the previous remittances which Suess testified he mailed at 10:30 a. m. on the 14th of the month were not delivered to defendant in due time.  Indeed, if we look into the history of this case we find that at the first trial the plaintiffs asked the jury to find from this evidence that all those premiums mailed on the 14th, including the one which the defendant refused to receive, were received by defendant on the 15th before noon.  The waiver theory did not come into the case until the next trial, which occurred five years after the first.  Plaintiffs having gone to the jury on the first trial on the proposition that the rejected premium was received within the time specified in the contract, and the verdict having been against them on that issue, changed front at the next trial and set up the waiver theory.  The evidence for the defendant was positive and uncontradict-

ed that the rejected premium did not reach the defendant until the 16th, and so the jury in the first trial found, and so the court sitting as a jury in the last trial found. At this last trial the plaintiffs by their instructions asked a judgment only on the waiver theory.

The error into which the court fell was in charging the defendant with acquiescence in the practice of plaintiffs in mailing their remittances in Miami on the 14th of the month, a matter with which defendant had nothing to do. In mailing their remittances on the 14th plaintiffs saw fit to give them barely time to reach their destination without accident or delay, and if they chose to take that risk they had a right to do so and defendant had no right to object as long as the remittance came within the time specified in the contract, and there is no evidence that any remittance so mailed failed to reach defendant within the contract time except the one due April 15, 1892, which was rejected and returned to the plaintiffs.

Defendant's action in declaring the policy terminated may be harsh treatment, but that is the contract; men have a right to make contracts of that kind and courts are not established to assist men in avoiding their contracts. According to the terms of the policy pleaded in the answer these plaintiffs had sixty days after the policy was declared terminated in which to reinstate it by furnishing a certificate of good health and paying the past premium, but the evidence shows they made no effort to do so. They waited nearly a year and brought this suit asking a judgment on the ground that they had made payments strictly in conformity to the contract, and when the verdict was against them on that issue and they had reflected on it for five years they concluded that they had been misled by defendant's conduct into thinking that defendant had waived that feature of the contract and they asked a judgment on that theory.

The court sitting as a jury found that the plaintiffs had not paid the premium within the time required by the contract. On that finding the judgment should have been for the defendant. The judgment is reversed.

All concur.