# GEORGE W. ROBBERSON, Respondent, v. GERTRUDE H. CLARK et al., Appellants.

**Springfield Court of Appeals, July 28, 1913.**

1. **SALE OF REAL ESTATE: Contract: Time Essence of: Waiver.** In a contract for the sale of land, even when time is of the essence of the contract and an exact date for the payment of each installment is fixed by the contract, such requirement may be waived, either by express agreement or by the conduct of the parties.

2. **———: Time of Payment: Forfeiture Provisions: Waiver.** A purchaser of land, to be paid for in monthly installments, made default in several successive payments. Several months after, the vendor accepted payment for the current month and gave a written order to the bank, which was holding the contract and collecting the payments, to allow the purchaser to continue his monthly payments as before default.. *Held*, that forfeiture for past defaults in payments was waived by the vendor.

3. **HUSBAND AND WIFE: Husband's Agency: Wife's Ratification.** Where a husband, acting as agent for the wife in the sale of real estate to be paid for in installments, waived the right to forfeiture on account of default under the contract and accepted a payment after such default, which the wife did not refund nor offer to refund to the purchaser, *held* that the husband's waiver was binding on the wife whether or not she knew of or authorized the receipt of such payment made to her husband acting as her agent.

4. **SALE OF REAL ESTATE: Contract: Construction of: Deferred Payments.** Appellants entered into a contract with respondent for the sale of a lot, price $350, to be paid for in monthly installments of $10, interest on deferred payments and in event of purchaser's death before completion of payments, a deed to be made to respondent's wife without further payments. The purchaser paid $130 by monthly payments, and then for eight months made no payments. At the end of that time he paid $5, agreeing to pay the remaining $5 of the current month's installment before the end of the month. Before the month ended, purchaser tendered $250 to pay for all that remained due on the contract, including interest on deferred payments, and requested a deed which the vendor refused to make. There was evidence that appellants had agreed to let

respondent pay the amount in full at any time. *Held,* that the vendor was not justified in refusing payment in full or in refusing deed; the only advantage that could come to the vendor by deferring the payments being the possibility that the purchaser would be unable to make further payments and thus suffer a forfeiture after he had paid a still larger amount.

5. **FORFEITURE: Not Favored.** The law does not favor forfeitures and equity never declares them.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*Wright Brothers* for appellants.

(1) Plaintiff did not live up to his contract and cannot recover. Grain Co. v. LeMar, 125 Mo. App. 139; Kreitz v. Egelhoff, 231 Mo. 694, 703. (2) The plaintiff took a chance on failing to make his payments, after making a portion and losing the amount of those made, and defendants took a chance on plaintiff making a portion of his payments and dying before the expiration of the time, and being required to execute a deed when only a small portion made. The parties had the right to make the contract. Sness v. Insurance Co., 193 Mo. 564, Harrison v. Railroad, 74 Mo. 364. (3) Plaintiff declared in his petition upon his right to recover upon a contract to pay for the land in payments of $10 each. Plaintiff must show performance of the stipulations and terms of contract. Bayse v. Ambrose, 32 Mo. 484; Buchanan v. Layne, 95 Mo. App. 148; Harrison v. Railroad, 74 Mo. 364; Koons v. Car Co., 203 Mo. 227; Kreitz v. Egelhoff, 231 Mo. 694.

*Leonard Walker* and *Hamlin & Seawell* for respondent.

(1) After the expiration of the time limited for payment the parties continued to deal together and

treated the contract as still existing. This amounted to a waiver. 1 Story on Eq. Jur., sec. 776; Melton v. Smith, 65 Mo. 315; Mix v. Baleac, 78 Ill. 217; Mastin v. Grimes, 88 Mo. 485; Boone v. Stempleman, 158 Cal. 290, 110 Pac. 947; Pomeroy on Contracts, sec. 294; Linscott v. Buck, 33 Mo. 530. (2) After a waiver time ceases to be essential and does not again become material until the vendor makes it so by a proper notice insisting upon performance within some reasonable time. 29 Am. and Eng. Ency. Law, 685; James v. Life Assoc., 148 Mo. 12; McMahon v. Maccabees, 151 Mo. 537; Claudius v. Amusement Co., 109 Mo. App. 350; Shook v. Ins. Co., 154 Mo. App. 394; Rogers v. Ins. Co., 155 Mo. App. 276. (3) Where the promisor before the time of performance expressly renounces his contract, the promisee is thereby entitled either to treat the contract as broken and sue at once for its breach without averring an offer or readiness to perform, or he may wait until the time of performance has expired, and then sue for the consequences of nonperformance. M'f'g Co. v. McCord, 65 Mo. App. 509. (4) The difference between the contract price and the value at the time the breach occurred and when the conveyance ought to have been made together with the amount paid by the vendee furnishes the standard of damages. Krepp v. Railroad, 99 Mo. App. 102.

STURGIS, J.—The plaintiff recovered judgment for $500 against the defendants, husband and wife, for damages from defendants' refusal to perform their contract and convey to plaintiff two town lots in an addition to the city of Springfield. The evidence shows that defendants had platted an addition to Springfield, the legal title to which was in the wife, and that they were engaged in selling these lots on time payments. The husband was the active agent of the wife in selling the lots, making contracts with reference

to the same and in collecting the money. For this purpose he maintained an office in Springfield and the contracts for sales of lots were generally left at some bank for convenience and safety in making the payments. Plaintiff's evidence was that in this particular instance the wife told him that her husband had charge of the matter and that any business transacted with him would be all right. On March 25, 1907, the defendants sold the lots in question to plaintiff for $350 on time payments, ten dollars being paid down and ten dollars to be paid each month thereafter, beginning May 1, 1907. The written contract executed by the parties provided that when all payments were made the said lots were to be conveyed to the second party by general warranty deed, free of all incumbrances; that six per cent interest should be charged upon the deferred payments; that if the purchaser should fail to make the payments as provided, then the contract would become void and the payments already made should be retained by the vendors as liquidated damages unless an extension of time should be agreed upon in writing. The contract was not to be recorded. It was provided that "an instrument executed and acknowledged by the first party declaring the exercise by such party of such option shall be prima facie evidence of default and failure on the part of the second party in compliance with this contract and of the cessation of all of second party's interest hereunder." There was also a provision to the effect that if the purchaser should die before completing the payments, the vendors would make a deed without further consideration to his wife.

The plaintiff made thirteen payments of ten dollars each on these lots, the last payment being for April, 1908. None of these payments were made on the first day of the month. Some of them were made a few days in advance and some of them after being due for nearly a month. The time of making the payments

was indorsed on the contract and the money either paid directly to one of the defendants or deposited in the bank where the contract was kept to the wife's credit. While the husband looked after the business for the most part, the wife kept sufficiently informed of it. that she must have known of the irregular payments. The plaintiff testified that on several occasions he told the husband of his being hard up and not able to pay promptly and that the husband assured him that it would be all right for him to pay whenever he could. No complaint was ever made as to his not paying promptly and no payments were refused or intimation given that the same would be refused if not paid promptly when due. Plaintiff also testified that on two or three occasions he spoke to the husband about the probability of his selling the lots or raising money enough to pay for the same in full and he was assured that such would be satisfactory. The plaintiff was a day laborer and when out of work was not able to pay.

The payment due April 1, 1908, was paid on April 3, and no further payments made during that year. No declaration of forfeiture in writing or otherwise was made for this failure. In January, 1909, the plaintiff desired to renew his contract and commence making the monthly payments again. He saw the husband with reference to this and was again assured that all that defendants wanted was the balance of the money due. The plaintiff thereupon paid five dollars and agreed to pay five dollars more, making a month's payment, before the end of that month. As the contract was at the bank, the husband wrote out and handed the plaintiff the following memorandum to be presented to the bank: "State Savings Bank. Let Geo. W. Robberson pay on his contract commencing in January and continue his payments each month at ten dollars per month according to the contract. He

173 Mo. App. 20

says he will pay five dollars today and the other five dollars he will pay this month so as to start his payments from January on.  Daniel W. Davies.  Jan. 11, 1909.''

Plaintiff took this memorandum to the bank, paid the five dollars, and same was deposited to the wife's credit.  The evidence is that at this time plaintiff again said that he thought he would be able to raise the money to pay the contract in full and was assured that such would be all right and the money would be accepted. On the faith of this, the plaintiff succeeded in borrowing sufficient money, $250, to pay all that was due on the contract, inclusive of interest on the deferred payments.  On January 29, 1909, this sum was tendered to the defendants and a request made for a deed, but same was refused.

It is a little difficult to understand the precise grounds of this refusal.  In the wife's evidence she seems to put it on the ground that plaintiff was demanding that the deed be made, not to plaintiff in person, but to his attorney, Len Walker, and that she refused to make the deed to the attorney.  Her evidence and that of her son, who heard what was said when the tender was made, shows that she was willing to make the deed to the plaintiff in person.  Knowing, however, that plaintiff could at once have made a deed to his attorney or anyone else, we fail to see why she should refuse on this ground or why the plaintiff would not accept a deed to himself.  This, however, is contradicted by plaintiff and his attorney, who say that there was no demand for or talk of the deed being made to anyone other than plaintiff.  The evidence also is that just after the tender of the full amount due, the defendants notified the bank holding the contract not to accept any further payments from the plaintiff on this contract.

The defendant, Mrs. Clark, says she knew nothing of the last five dollars payment or any agreement of

her husband with reference thereto and, when she learned of it, directed the bank to pay it back to plaintiff. She is not corroborated in this by anyone connected with the bank and the money was not refunded or tendered back. While Mrs. Clark concedes that her husband had full authority to make contracts relative to these lots during the earlier part of this transaction, she says he had ceased to so act for her, at least with such full authority, at the time the five dollar payment was made. There is no evidence, however, that plaintiff was informed or had any knowledge of the changed relations of the defendants with reference to each other and plaintiff says that the wife expressly referred him to her husband as to this very matter.

It may be doubted whether the time of making payments was of the essence of this contract. There is a provision in the contract to the effect that interest is to be charged on the deferred payments at six per cent. This negatives an intention to make the time of payments essential and of forfeiting the contract unless each payment was made promptly on the first of the month; for in that case there could be no deferred payments. However this may be, the law is well settled that even where time is of the essence of the contract and an exact date for the payment of each installment is fixed by the contract, this requirement may be waived either by express agreement or by the conduct of the parties. Thus it is said in Mastin v. Grimes, 88 Mo. 478, 485, "Even if by the express terms of the contract a day of payment be fixed and time declared to be of the essence of the contract, still this is no bar to the time of payment being postponed, or to this essential element being altogether waived. And if, after the expiration of the time limited, the parties continue to deal together or to treat the contract as still existing this amounts to a waiver. [1 Story on Eq. Jur., sec. 776; Melton v. Smith, 65 Mo. 315;

Mix v. Balduc, 78 Ill. 217.]" The general rule on the subject is thus stated by Mr. Pomeroy: "A condition that the title shall be made, or the price shall be paid, on or before the day named, may be waived by the party entitled to performance; and if such party thus waives the exact performance at the day, or if he goes on treating the agreement as still binding after default has been made, he cannot afterwards turn around and set up the delay or default as creating a forfeiture, and therefore a defense." [Pomeroy on Contracts, section 337.] The case of Boone v. Stempleman, 158 Cal. 290, 110 Pac. 947, 139 Am. St. Rep. 126, contains a review of many authorities and sustains this view of the law.

Besides this, there is abundant evidence in the case to support the finding that defendants in January, 1909, expressly agreed to waive any forfeiture for past defaults in making payments and that plaintiff would be allowed to continue his monthly payments beginning with that date. Such is the effect both of the oral evidence and the written order to the bank then holding the contract. On the faith of this understanding the five dollar payment was made and put to the credit of Mrs. Clark in the bank. As before stated, this was not refunded or a tender of the same made to plaintiff. Even if Mrs. Clark did not know of or authorize the receipt of this payment made to her husband acting as her agent, she could not while holding the fruits of his unauthorized act escape its burdens. [Davis v. Krum, 12 Mo. App. 279; Watson v. Bigelow, 47 Mo. 413; Ruggles v. Washington County, 3 Mo. 496; Huttig Sash & Door Co. v. Gitchell, 69 Mo. App. 115.]

Defendant's greatest insistence in this court is that plaintiff only had the right to pay by monthly installments and not in one lump sum. They say that such is the strict letter of the contract and cite Suess v. Insurance Co., 193 Mo. 564, 575, 91 S. W. 1041; Har-

rison v. Railroad, 74 Mo. 364, 370, in support of this contention. In making this argument, however, it is not claimed that plaintiff did not tender enough and more than enough to pay all the unpaid installments and the interest on those delinquent. This contention loses sight of the fact that the evidence warranted a finding that defendants expressly agreed to let plaintiff pay the amount in full and that relying on this promise the plaintiff went to the trouble and expense of borrowing the money with which to make the payment in full. Moreover, the unpaid installments did not draw interest until due and their payment in advance would apparently be of advantage to defendants. At least they cannot claim that they lost anything by not having their money invested. By accepting the cash payment in full defendants would also relieve themselves of the danger of losing further installments in case of plaintiff's death, as in that event they were bound to treat the contract as fully paid and make a deed to plaintiff's widow and heirs. The only advantage pointed out that defendants could or would gain is the chance of the plaintiff being unable to make further payments and thus suffer a forfeiture after he had paid a still larger amount. This argument does not appeal to us as being either good law or good morals. Defendants are in effect asking to be given a chance to profit from plaintiff's poverty or misfortune. The law does not favor forfeitures. Equity, where conscience plays a large part, never declares them. [Froehlich v. Insurance Co., 47 Mo. 406; McCollum v. Insurance Co., 61 Mo. App. 352; Heman v. Wade, 140 Mo. 340, 41 S. W. 740; Moberly v. Trenton, 181 Mo. 637, 645, 81 S. W. 169; Messersmith v. Messersmith, 22 Mo. 369.]

The instructions submitting this case to the jury are not criticised. The jury found for the plaintiff and it cannot be claimed but that there is some evidence to support this finding. The amount of the

verdict is within the limits of the evidence and in such cases the finding of the jury cannot be disturbed. It results therefore that the judgment should be affirmed. All concur.