Conrad C. POOLE and Rose A. Poole, Plaintiffs-Appellants,

v.

Robert F. ROLOFF and Marion C. Roloff, Defendants-Respondents.

No. 31036.

St. Louis Court of Appeals.

Missouri.

Oct. 16, 1962.

Don L. Schlapprizzi, James W. Jeans, Gray & Jeans, St. Louis, for appellants.

Hale W. Brown, Kirkwood, for respondents.

BRADY, Commissioner.

The appellants, hereinafter referred to by their trial designation of plaintiffs, brought this action against the respondents, hereinafter referred to as defendants, for damages resulting from defendants' cutting and removing timber from land in plaintiffs' possession, but to which the title was in defendants. The jury returned a verdict for plaintiffs in the amount of $1,800.00 and final judgment was entered thereon. Defendants filed a motion for new trial, as did the plaintiffs, the latter limiting their motion to the issue of damages. Defendants also filed a motion "* * * To Have Verdict And Judgment Set Aside And For Entry of Judgment Notwithstanding the Verdict of the Jury." See Civil Rule 81.01 V.A. M.R. The trial court overruled both motions for new trial and sustained the defendants' motion to have the verdict and judgment set aside and for entry of judgment in defendants' favor on certain speci-

fied grounds. However, the trial court did not enter judgment for defendants. Plaintiffs appeal, as stated in their brief, from the order sustaining this motion to set aside the verdict and judgment and for entry of judgment notwithstanding the verdict of the jury, and from the order " * * * overruling their Motion for a New Trial on the issue of damages."

■ While the issue is not raised by defendants, it is this court's duty, sua sponte, to determine its jurisdiction. Although there was no judgment entered for defendants, the record does show that defendants' motion which included a prayer for entry of judgment was sustained. The failure to perform the ministerial duty of formally entering the judgment for defendants does not affect its validity, State v. Haney, Mo., 277 S.W.2d 632, 55 A.L.R.2d 717. Of course, there being no judgment entered, the plaintiffs were thereby led into filing their appeal as they did, and in these circumstances the plaintiffs have clearly made a good faith attempt to properly appeal.

Because of the somewhat unusual circumstances of this case arising after the trial, a proper delineation of the issues here presented requires a disposition of the plaintiffs' first allegation of error prior to a consideration of the cause of its merits. This rather novel situation results from the fact that in sustaining the defendants' motion to have the verdict and judgment for plaintiffs set aside and judgment entered in defendants' favor, the trial court's action was taken without any notice to plaintiffs and neither were plaintiffs given any opportunity to be heard upon the matter. Such action by the trial court is assigned as error by the plaintiffs.

■ It should be noted that the trial court's action in this case goes far beyond that held erroneous in Albert J. Hoppe, Inc. v. St. Louis Public Service Company, Mo., 235 S.W.2d 347. In the Hoppe case, the trial court attempted to award a new trial without notice and hearing. In the instant case the trial court, without notice and hearing, actually took away a judgment, entered upon a jury verdict, and denied a new trial. The injury to the plaintiffs was accordingly much more severe than that suffered in Hoppe, supra. In any event, the application of the rule of Hoppe, supra, to the instant case becomes even more apparent when it is borne in mind that Civil Rule 81.01, V.A.M.R., abolishes the motion for judgment notwithstanding the verdict and provides for the incorporation of the grounds for such motion in the Motion for New Trial. Furthermore, in compliance with Civil Rule 55.42, V.A.M.R., the circuit court of St. Louis County had promulgated Rule 13(d) of that court which provided that unless otherwise designated by the judge of the division in which trial was held, motions and other proceedings incident to the trial thereof shall be heard in the trial division on Fridays, at 9:30 A.M. The defendants do not deny the application of the Hoppe case to this factual situation, but urge that since the trial court should have sustained defendants' motion for a directed verdict the error is harmless. This court feels that contention to have merit, and we will first determine whether or not the trial court should have overruled defendants' motion for a directed verdict.

■■ The transcript discloses that the defendants filed such a motion at the conclusion of their evidence and at the close of all the evidence. While the defendants in their contention set out above do not state which motion they are referring to, the transcript discloses that they presented evidence after their motion for a directed verdict offered at the close of plaintiffs' case was overruled. Accordingly, defendants are relegated to their motion for a directed verdict offered at the close of all the evidence, Woods v. Dalton, Mo.App., 331 S.W.2d 132. We will search the whole record to determine if the defendant was entitled to a directed verdict; that is, whether or not plaintiff made a submissible case. In determining whether a submissible case was made, and since the plaintiffs prevailed below, it requires no citation to establish

our duty to view the evidence in the light most favorable to plaintiffs.

The plaintiffs entered into a contract with the defendants on December 12, 1955, for the purchase of the farm referred to in the evidence. This contract made the following provisions as to payment of the purchase price of $21,500.00: down payment of $1-500.00, receipt of which was acknowledged in the contract; $100.00 per month beginning February 2, 1956 and ending with the payment of January 2, 1957; $200.00 per month beginning on February 2, 1957 and continuing through January 2, 1961; balance of purchase price and interest to be paid on January 2, 1961, at which time plaintiffs were to receive defendants' warranty deed. The plaintiffs agreed to pay interest on the purchase price from January 1, 1956 at 6%, and the monthly payments were to be applied " * * * on taxes, interest, insurance and principal." The other pertinent parts of this contract are as follows:

"It is understood between the parties hereto that if parties of the second part should default in any of said hereinabove mentioned payments, then parties of the first part shall notify second parties of such default by registered mail, and if delinquent payments are not paid within thirty (30) days after such notice, then this agreement shall be void and parties of the first part may retain all payments theretofore made by second parties in full satisfaction for and in liquidation of all damages by them sustained, and parties of the first part shall have the right to re-enter said premises and take full possession thereof.

"Parties of the first part agree to keep the buildings on said premises insured against loss by fire, lightning and tornado, and in case same are damaged by fire, lightning or tornado, parties of the second part shall have the option to use the amount received by insured for payment on sale price or toward the re-building of the damaged property.

"Parties of the second part agree to cultivate the land in a husband-like manner, to prevent erosion thereon, and to take proper care of the buildings on said premises; and parties of the second part agree not to cut or remove any timber without the written permission of parties of the first part."

The contract also provided that the plaintiffs were to have " * * * possession of said premises when this agreement has been signed * * * " and the defendants were to receive the net proceeds of all crops grown on said premises when sold and were to credit the cash value thereof to plaintiffs against the principal debt.

The decisive question in this case is determined by facts that occurred beginning in July, 1958, and therefore the evidence prior to that time will be referred to only briefly. The plaintiffs' evidence was that they made all the payments called for by the contract for the year 1955; made eleven payments in 1956; eleven in 1957, and had made six payments up to July, 1958. However, Mr. Poole admitted he was $1,900.00 behind in his payments on July 1, 1958. On that day he received a registered letter from the defendants which read as follows:

"Dear Mr. and Mrs. Poole:

"Your monthly installment payments as provided in our purchase contract dated December 12, 1955, are delinquent in the amount of $1,900.00 as of July 1, 1958. I am notifying you hereby that unless all delinquent payments are brought up to date within the next thirty days from above date our agreement will be null and void.
"Yours very truly,"

Plaintiff further testified that after receiving that letter he went to see Mr. Roloff personally, and was told by Roloff that if he could make up the back payments within two years from the date of that conversation and would continue the $200.00

monthly payments " * * * then we would go ahead as was * * *"; that in reliance on that conversation plaintiffs purchased some cattle costing $1,200.00, and " * * * attempted to purchase some equipment"; that he remained in possession of the farm and resumed payments; that he paid $1,900.00 after July 1, 1958, identifying the cancelled checks therefor; and that he received from the defendants a statement, his Exhibit 15, dated December 31, 1958, showing credits for payments during 1958 after July 1st, and also showing credits to Poole of $5.43 and $151.40 from the wheat crop credited 7/10/58. On that same exhibit the plaintiffs were debited on 11/10/58 in the amount of $205.13 for taxes, and $1,154.29 for full twelve months interest. The insurance premium was also debited to him as of 4/6/58, although the exhibit does not show nor does the testimony reveal whether this was for the full year. Mr. Poole further testified that he sent the defendant another $200.00 check dated May 15, 1959, which defendant returned.

The checks previously referred to show that on April 13, 1959, defendants deposited plaintiff's check for $200.00 dated April 3; and on May 8, 1959, deposited plaintiff's check for $200.00 dated April 30. The plaintiffs' evidence shows that they paid between $8,000.00 and $9,000.00 under the purchase agreement, and of this amount, plaintiff testified that $2,100.00 was paid after he received the notice of July 8, 1958. However, the checks show that $1,900.00 was accepted by defendants after that date, and the checks representing that amount were deposited by defendants. Presumably, the other $200.00 was represented by the check of May 15, 1959, which defendant returned. That check is not in evidence. It was not disputed that one Buxton and his employees, under contract with defendants, entered the land and began cutting and removing timber, with the trespass first occurring on April 8, 1959. Four hundred dollars was accepted by the defendants as payments by the plaintiffs after this date.

The defendants' evidence which is of aid to plaintiffs was that two letters were sent to plaintiffs in July of 1958, notifying the latter that the contract was cancelled; that on July 29, 1958, defendant Roloff did have a conversation with Mr. Poole who was then $1,900.00 delinquent; in the course of which Roloff informed Poole that " * * * I told him I would give him six months in which he might have an opportunity to completely catch up with the payments; that was only after he told me that he thought he could do it. He was discussing re-financing with some agency of the government, some sort of re-financing plan, * * *." Roloff's further testimony was that Poole was further behind than ever at the end of that six months, and the defendants sent a third notice to plaintiffs under date of January 30, 1959, reading as follows, with emphasis supplied:

"Dear Mr. and Mrs. Poole:

"Your monthly installment payments as set forth in your purchase contract dated December 12, 1955, are delinquent.

"I am notifying you hereby that *unless all delinquent installments are paid as called for in said purchase contract within the next thirty days*, our agreement will be null and void and I will expect you to vacate the premises on or before March 1st, 1959.

"Yours very truly,"

The defendant further testified that he went to see the plaintiff in February of 1959 and told him to vacate and then entered into a contract with an adjoining owner, Mr. West, for cultivation of the tillable acreage, and on April 9, 1959 entered into the contract with Buxton for cutting and removing the timber.

On May 10, 1959, the defendant Roloff sent a letter to plaintiff, Plaintiffs' Exhibit 17, reading as follows:

"Dear Mr. and Mrs. Poole:

"Attached hereto is a statement of credits and debits for 1958 relating to

the Wright City farm and a summary of all payments made by you to date on your Dec. 12, 1955 agreement which shows $2,100.00 in delinquent payments.

"Although your payments more regular during recent months, the overall picture of payment is not good. During the three and one-half years of your occupancy, the farm buildings have depreciated to such an extent that the Farmers Mutual Insurance Company has cancelled its insurance.

"In view of this situation, I am forced to take steps necessary to protect my interests.

"Yours very truly,"

On May 15, 1959, the Roloffs sent a letter to the Pooles, reading as follows, with emphasis supplied:

"Dear Mr. and Mrs. Poole:

"I am returning herewith your May 20th, 1959 *pre-dated* check.

"According to the terms of our December 12, 1955 Agreement, your monthly cash payments are in default $2,100.00 as of May 2, 1959.

"The farm buildings have depreciated during your occupancy due to lack of proper care, as provided for in the December 12, 1955 Agreement, to such an extent that the Insurance Company has cancelled some of its insurance pending necessary repairs.

"Therefore, we are notifying you hereby that *unless all delinquent payments are paid within thirty days from above date*, as called for in the purchase Agreement dated December 12, 1955 for property described as:

"The West half of the Southwest quarter and the Southwest quarter of the Northwest quarter of Section 3, and The West half of the Northwest quarter and the Northeast quarter of the Northwest quarter of Section 10, All in Township 47, North, Range 1 West, Warren County, Mo., containing 240 acres, more or less,

and *unless necessary maintenance repairs are made as called for in the Agreement,* said Agreement shall be null and void in strict accordance with terms provided in the last paragraph on page two of said Agreement, and you will be expected to vacate the premises forthwith.

"Yours very truly,"

The gist of an action for trespass is disturbance of possession, Barnhart v. Ripka, Mo.App., 297 S.W.2d 787 and cases cited at [1–3] page 789. The plaintiffs here were purchasers under a contract for the purchase of this farm and were put in possession under this contract. Since they did not dispute defendants' record title, the plaintiffs had the burden of proving that they were rightfully in possession as against the defendants at the time the trespass occurred, Hoelmer v. Heiskell, 359 Mo. 236, 221 S.W.2d 142; Barnhart v. Ripka, supra. A defendant in such an action may dispute a plaintiff's possessory right by showing title and the possessory right in himself, Hoelmer v. Heiskell, Mo., 221 S.W.2d at [2–4] p. 144 and cases there cited. To contest plaintiffs' evidence on this issue, the defendants contended the plaintiffs did not have possession at the time of the alleged trespass because of the notices sent to plaintiffs in July of 1958 after default in the installment payments. However, the evidence clearly shows that the defendants allowed the plaintiffs to remain in possession, and according to plaintiffs' evidence, accepted $1,900.00 in contract payments after the notices of July, 1958 were sent, and moreover, orally agreed to extend the time of payment. The alleged trespass began— and this was undisputed—on April 8, 1959. Nevertheless, as late as May 15, 1959, by registered letter, the defendant Roloff clearly recognized the continuation of the purchase contract, for in that letter as set out above he stated that " * * * unless all delinquent payments are paid within thirty day * * *" from May 15, 1959,

and "* * * unless necessary maintenance repairs are made as called for in the Agreement * * *" the agreement shall be null and void. We think it is clear from this letter and the defendants' other communications and actions that the defendants treated the contract as still in force and the plaintiffs as being in possession of the farm over thirty days after the date of the alleged trespass. They even accepted $400.00 in payments after the date of the trespass. The plaintiffs' evidence clearly bears out their contention of a waiver by the defendants as to the terms of the contract for purchase, Robberson v. Clark, 173 Mo.App. 301, 158 S.W. 854 at [1] page 855; Bogad v. Wachter, 365 Mo. 426, 283 S.W.2d 609 at [4, 5] page 614; Rogers v. Gruber, 351 Mo. 1033, 174 S.W. 2d 830 at [2] page 831. Moreover, it cannot be denied that the defendants are liable for the trespass, Curlee v. Donaldson, Mo.App., 233 S.W.2d 746; Cooper v. Massachusetts Bonding & Insurance Company, 239 Mo.App. 67, 186 S.W.2d 549 at [4] page 551, even though it was actually done by Buxton and his employees. The result reached herein is clearly indicated by the early case of Brown v. Hartzell (1885) 87 Mo. 564. In that case, plaintiff purchased a piece of land from a third party but never had actual possession although he took title to it. The defendant had purchased the same land from this same third party the year before, and had received permission to go into possession. While in possession, defendant cut and removed timber but his contract for the title to the land was never consummated. It was held that since the defendant was in possession under a contract of purchase the plaintiff could not maintain the trespass action against him even though plaintiff had title to the land. The converse, as presented in this case, is equally true. It follows that the plaintiffs made a submissible case of trespass on real estate and the trial court correctly ruled in denying defendants' motion at the close of the evidence for directed verdict.

The remaining issue is whether the plaintiffs are entitled to a new trial on the issue of damages. The plaintiffs' assignments of error in this regard amount to a contention that the verdict was inadequate. The measure of damage instruction required the jury to assess as damages the reasonable market value of the trees as they stood before they were cut and carried away, Sligo Furnace Company v. Hobart-Lee Tie Company, 153 Mo.App. 442, 134 S.W. 585. What happened was that the plaintiffs' evidence as to the value of these trees as they stood varied from the maximum of $10,177.50 to the minimum testified to of $3,565.00. This was based upon 1,185 trees cut. The transcript does disclose that the trial court did admit evidence as to the fair monthly rental of the farm after the trespass was committed and evidence as to whether the plaintiffs held over on the farm and had to be evicted. The purpose of that evidence was undoubtedly to mitigate damages but the defendants did introduce other evidence going to the measure of damages submitted. This evidence was that the value of the trees as they stood was $1,800.00 which is the exact amount the jury found for the plaintiffs. It is obvious that as to the issue of damages the jury believed the defendants' experts rather than the plaintiffs'. This they were entitled to do, and our interference would be unwarranted. The trial court did not err in denying plaintiffs' motion for new trial on the issue of damages only for there was evidence to support the amount found under the measure of damages submitted.

Accordingly, the plaintiffs having made a submissible case, the trial court's error in sustaining defendants' motion to vacate the jury verdict and judgment for plaintiffs entered thereon and to enter judgment for defendants, an action taken without giving any notice to plaintiffs or giving plaintiffs an opportunity to be heard, is prejudicial, and the judgment should be reversed and this cause remanded to the trial court with directions to reinstate the

verdict of the jury and to enter judgment thereon. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded to the trial court with directions to reinstate the verdict of the jury and to enter judgment thereon.

ANDERSON, P. J., WOLFE, J., and GEORGE P. ADAMS, Special Judge, concur.

RUDDY, J., not participating.