ELIZABETH E. WATSON *et al.*, Respondents, *v.* CHARLES D. BIGELOW *et al.*, Appellants.

47   413|
54a 332|
47   413|
57a   77|
57a 645|
60a 265|
47   413
69a 121

1. *Agency — Principal, ratification of acts of agent by — Appropriation and disposal of property.*—Where an agent, without the authority of his principals, borrows money and invests it in property, the principals, by afterward appropriating and disposing of the property for their own benefit, will be held to ratify the act and become liable; and the measure of their liability is the amount of money borrowed, and not that realized by the sale.

*Appeal from St. Louis Circuit Court.*

*E. T. Allen*, for appellants.

I. Nothing short of an express ratification, with full knowledge of all the facts, would render the principal liable in the case at bar. There was no evidence of any such express ratification.

II. The verdict of the jury in this cause must of necessity have been for a smaller sum than the one in the record. Under the instructions, as given by the court below, plaintiff could only recover for the value of the property sold by defendants after knowledge of plaintiff's claim, etc. The evidence adduced by plaintiff is to the effect that the property did not exceed in value $450, yet the verdict was for the sum of $600, with interest. This point was brought before the Special Term of Circuit Court on the motion to set aside verdict and for a new trial, yet the motion was overruled. (Fury v. Merriman, 45 Mo. 500.)

*J. N. Straat*, for respondents.

BLISS, Judge, delivered the opinion of the court.

Defendants were manufacturers of boots and shoes in New York city, and in July, 1866, established an agency in St. Louis under the sole management of one Charles T. Hay. In November following, the plaintiff, Mrs. Watson, through her husband, William C., loaned to said Hay the sum of $600, which belonged to her separate estate, and took his note. The money went into the business of the house, and most of it was expended in the purchase of a horse, buggy and harness, to be used by

agents in soliciting business. Its use was known to the plaintiffs and it was borrowed for the house, the agent, Hay, signing the note as he was accustomed to sign receipts, bills, etc., with his own name, without using the name of his principals or the word "agent." But it appears that he was forbidden to run the house in debt, and made no report to his employers of this loan, and his reports to them indicate that he designed to conceal it from them. In January, 1868, the house not prospering, the defendants sent out two of their partners to examine into their business, and finding that Mr. Hay was behind in his private account and had overdrawn his salary, they compelled him to resign, and took possession of all the property, including the horse and buggy. This note was presented to them; they were informed as to the use made of the money borrowed upon it, but they refused to pay it, claiming that Hay had no right to borrow money, and that he had obtained this to cover up his defalcation. They, however, retained the property, and afterward sold it. Evidence was given bearing upon Watson's knowledge of Hay's alleged object in borrowing the money, but as defendants' instructions upon this point were given to the jury, it is unnecessary to consider it.

The court gave the following instruction, to which defendants excepted: "If the jury believe from the evidence that said Hay was duly authorized by defendants to conduct and carry on their business in St. Louis, and that he borrowed from the plaintiffs the $600 as alleged by the plaintiff in his petition, and that said money so borrowed was used in the business of defendants, and that defendants received the benefit of said money so obtained; notwithstanding the jury may believe from the evidence that said Hay had no authority to borrow money on the credit of his principals and could not bind them therefor, still, if the jury find that defendants retained the possession of the property bought with the money so borrowed, after they knew of the fact that with the money borrowed the property had been bought, and sold said property after such knowledge, and received the proceeds of such sale, it is in law a ratification of the act of their agent to that extent, and they became liable for the money, the benefit of which was received by them, and the jury will find for the plaintiff

to that amount." By this instruction the court would only hold the defendants for the amount for which the property was sold. The jury, however, gave a verdict for the $600 and interest, for which judgment was rendered. And upon the supposed state of facts this verdict is right. The instruction seems to have been drawn upon the supposition that the plaintiff had an interest in property bought with her money, and that defendants should account for its proceeds. But their liability arises from the fact that they received the benefit of the money borrowed, and ratified the unauthorized act of their agent by appropriating and disposing of the property. His act being so ratified, they became bound by the contract made for their benefit without reference to the amount for which they sold it. Hence that cuts no figure in the case. If the money borrowed went to the use of the St. Louis house of defendants, and if, when they ascertained the fact that it had been borrowed for them and expended in the purchase of specific property employed in their business, they retained the property and sold it, the note, upon every principle of justice, became their own debt, and so the jury should have been instructed. We are cited to Bryant v. Moore, 26 Me. 84, as a modification of this doctrine of implied ratification. The general doctrine is thus clearly stated by the court: "There is no doubt that if one person knows that another has acted as his agent without authority, or has exceeded his authority as agent, and with such knowledge accepts money, property or security, or avails himself of advantages derived from the act, he will be regarded as having ratified it." But in that case the agent, in exchanging an ox of the plaintiff, had warranted him without the plaintiff's knowledge, the other party knowing that he had no authority to make the warranty. Notwithstanding the plaintiff had received the defendant's ox in exchange, the court held that he was not bound by the warranty because it did not come to his knowledge until too late to repudiate the exchange without loss to himself. And in a case supposed by the court to illustrate its view, the person seeking to take advantage of the contract of the agent knew that the agent was exceeding his authority. Defendants in the present case would have received no injury from the

specific transaction in controversy had they repudiated the contract when it first came to their knowledge, but rather a benefit.

Defendants' counsel have raised a multitude of points and questions, but this view deprives them of their importance; and the other judges concurring, the judgment will be affirmed.