HENRY H. WOOLSTON, Respondent, v. SOUTH-
    ERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, November .4, 1913.

1. COMMON CARRIERS: Delivery of Goods to Wrong Person:
Liability of Carrier. A common carrier is required to be abso-
lutely certain that a person to whom it delivers goods trans-
ported by it is rightfully entitled thereto, and neither fraud,
imposition nor mistake will excuse it for making delivery to the
wrong person.

2. ————: "Shipper's Order" Bills of Lading: Delivery of Goods
to Wrong Person: Conversion. A bill of lading for a ship-
ment, issued to "shipper's order," notify a third person, signi-
fies that the shipper is the consigee and that the third person is
to be notified on the arrival of the shipment, and does not auth-
orize a delivery of the shipment to the third person without the
production of the bill of lading, and hence a delivery to such
person without his producing the bill of lading would constitute
a conversion on the part of the carrier.

3. ————: Freight Charges and Advances: Carrier's Lien. A
common carrier has a lien on goods for their carriage and for
such advances as it has been required to make for the owner
in order to further their transportation to destination.

4. PRINCIPAL AND AGENT: Unauthorized Acts of Agents:
Right of Principal to Ratify or Repudiate. While a principal
has the right to elect to either repudiate or ratify in *toto* an
an unauthorized act of one purporting to act for him, he can-
not ratify part and repudiate part.

5. COMMON CARRIERS: Delivery of Goods to Wrong Person:
Ratification by Consignor: Principal and Agent. Where a
consignor, after receiving information that a carrier has made
delivery of the goods shipped under a "shipper's order" bill
of lading, without requiring the production of the bill, accepts
the benefits of a sale of the goods made by the person to whom
the wrongful delivery was made, as in part compensation, he
will be regarded as having ratified the delivery, so as to debar
him from recovering against the carrier as for a conversion.

6. ————: ————: ————: ————: Facts Stated. A quantity of
hay shipped by plaintiff having been refused by the person to
whom it was sold, plantiff reshipped it to another place under
a "shipper's order" bill of lading, with a direction to notify a
certail broker of its arrival. The second shipment was carried

over the lines of two carriers, the first carrier advancing the freight charges which had accured on the first shipment. On the arrival of the hay at its destination, defendant (the final carrier) wrongfully delivered it to the broker, without his production of the bill of lading, and the broker sold the hay, paying the freight charges for both shipments out of the proceeds, and accounting to plaintiff for the balance. Plaintiff rejected the account and returned the broker's check for the balance, but did not return the receipted freight bills. *Held*, that plaintiff, by having accepted so much of the proceeds of the consignment as were applied in liquidation of the freight which had accrued against him for the first shipment, for which the carrier had a lien, ratified defendant's wrongful delivery and was estopped to proceed against defendant as for a conversion,

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED.

*Samuel B. McPheeters* and *McPheeters & Wood* for appellant.

(1) The wrongful act of an agent in obtaining possession of a shipment without surrendering the bill of lading may be ratified by the principal, expressly or impliedly, and the objection to the amount of freight paid, together with the retention of the receipted freight bills, and the correction of a credit memo by the principal upon receiving said items in the settlement and statement of his broker or agent, constitute an implied ratification of acts of the agent or broker. (2) The plaintiff waived his claim against the Southern Railway and elected to hold Gibson by again drawing on Gibson after receiving his report of sales. 1 Hutchinson on Carriers, p. 199, sec. 183; Railway v. Kinchen, 103 Ga. 186.

NORTONI, J.—This is a suit in trover as for conversion. Plaintiff recovered and defendant prosecutes the appeal.

The subject-matter of the conversion is three car-loads of hay. Defendant is a common carrier of goods, and it appears that plaintiff is a dealer in hay, residing at Nokomis, Illinois, and as such consigned the three carloads of hay involved here to the Harriman Grain Company at Harriman, Tennessee, to whom he had sold it subject to inspection. The hay was shipped from Herrick, Illinois, in the latter part of October, 1907, to Harriman. After receiving the bills of lading for the three carloads of hay, plaintiff negotiated them to his banker at Nokomis, Illinois, and drew a draft on the Harriman Grain Company for the amount due thereon. Upon the arrival of the hay at Harriman, the Harriman Grain Company rejected it, on the ground that it was not up to grade, and plaintiff was notified accordingly of such rejection. The draft annexed to the bills of lading was, of course, unpaid for the reasons stated, and the bills of lading with draft annexed returned to the bank at Nokomis. Thereupon plaintiff sent his son to Harriman, Tennessee, for the purpose of inducing the Harriman Grain Company to accept the consignment, or, if unable to do so, to sell it to another.

Plaintiff's son was unable to dispose of the hay on arriving at Harriman and thereupon arranged to ship it to Knoxville, Tennessee, for market there. To effectuate this purpose, plaintiff's son surrendered the three bills of lading for the several cars to the Cincinnati, New Orleans & Texas Pacific Railway Company at Harriman, and entered into a new shipping contract with that company for the transportation of the hay to Knoxville, Tennessee. It appears that there had then accrued on the original shipment from Herrick, Illinois, to Harriman, Tennessee, $225 in freight charges, which, it is said, the carrier advanced toward effectuating the new shipment from Harriman to Knoxville. At any rate plaintiff took up the draft and the bills of lading attached thereto, and his son, with full authority in that behalf, surrendered the latter to the Cincinnati,

New Orleans & Texas Pacific Railway Company at Harriman, Tennessee, and entered into a new contract of carriage with that company, whereby the three carloads of hay were consigned to plaintiff—that is, under bills of lading "shipper's order, notify R. K. Gibson & Company," his brokers, at Knoxville, Tennessee. According to this new shipment, the hay was to be transported via the railroad last mentioned and defendant Southern Railway Company. After having received the new bills of lading, under which the hay was consigned to plaintiff's order, notify Gibson & Company, plaintiff drew a draft for $250 upon his brokers annexed the three bills of lading to this draft and negotiated them to his banker at Nokomis, Illinois.

This latter or second shipment of the hay was made on November 23, 1907, and it appears the hay reached Knoxville via. the defendant Southern Railway Company, connecting and final carrier, on November 30. The bills of lading under the second shipment and the draft attached thereto failed to come forward promptly, and plaintiff's brokers, R. K. Gibson & Company, before receiving the bills of lading, and, it is said, without knowledge of the draft annexed, called upon defendant Southern Railway Company for a delivery of the hay. Defendant delivered the hay to R. K. Gibson & Company without a surrender of the bills of lading therefor, and this suit proceeds against the latter carrier, as for the conversion of the hay, because of that fact. The hay appeared to be comewhat under grade and of poor quality. Because of this fact R. K. Gibson & Company, the brokers, had difficulty in disposing of it, but finally sold it to the firm of Lewis & Leonhardt, dealers in like commodities, under an arrangement whereby the latter firm was to deduct an account of $59.58 which plaintiff owed to them on some prior dealings. The hay was sold by the brokerage company to Lewis Leonhardt at $13 per ton, which amounted to the sum total $375.54 for the three

cars. The brokerage company paid out of this sum the $59.58 which, it is said, plaintiff owed as the balance on an account to Lewis & Leonhardt, paid freight advanced by the carrier—that is, the Cincinnati, New Orleans & Texas Pacific Railway Company—at Harriman, Tennessee, on the shipment, amounting to $225, and an additional charge of $72 for the transportation of the hay from Harriman to Knoxville—that is, a total freight charge of $297.

This was about the first of December, and about January 20 following, R. K. Gibson & Company sent plaintiff a statement of the account, together with a check for $18.96 as the balance due him on the transaction. However, a few days after defendant Southern Railway Company delivered the hay to R. K. Gibson & Company and the latter sold it, the draft for $250, together with the three bills of lading annexed thereto, was presented to R. K. Gibson & Company through the instrumentality of a Knoxville bank. But Gibson & Company declined to pay the draft and it was returned to plaintiff's banker at Nokomis, Illinois. Thereafter plaintiff repaid his banker the $250 advanced to him on the bills of lading and took up the draft together with the bills of lading attached. At the time R. K. Gibson & Company, brokers—that is, on January 20—mailed plaintiff a statement of the account and a check for $18.96, payable to plaintiff, they transmitted to him as a part of the settlement receipted freight bills showing a payment of all of the freight charges against the shipment, that is to say, a receipted freight bill showing a payment of $225 accrued and advanced at Harriman, Tennessee, and likewise a payment of seventy-two dollars freight from Harriman to Knoxville. It appears that, though plaintiff retained the receipted freight bills, he wrote to his brokers R. K. Gibson & Company, objecting to the settlement and insisting that the freight was too high. Moreover, he insisted that a few dollars more was due him on account of an error in the

figures. At this time plaintiff returned to his brokers the check of $18.96 which had been sent him to cover the balance due. The brokers immediately went about the matter of inducing the carriers to rearrange the freight charge and substitute a through rate on the hay for the local rate between Harriman and Knoxville. Defendant company acceded to this and refunded seventy-two dollars of the freight charges, and Lewis & Leonhardt, the purchasers, upon going over their figures paid the brokers $6.36, in addition, to correct an error in the account. Thereupon the brokers forwarded to plaintiff a check for $97.32, which included the former balance of $18.96, which he had declined, seventy-two dollars refund on the freight charge, and $6.36 received from Lewis & Leonhardt on account of error, but plaintiff declined to accept the tender in satisfaction of his claim. Notwithstanding his rejection of this tender, plaintiff retained and continues to retain the receipted freight bills which he received from R. K. Gibson & Company, covering the original freight charge from Herrick, Illinois, to Harriman, Tennessee, and from thence to Knoxville.

NORTONI J. (after stating the facts).—Though plaintiff negotiated the bills of lading to his banker, it appears the title to the hay resides in him at the present time, for, upon the dishonor of the draft, he paid the same and took up the bills of lading annexed thereto. It is entirely clear that defendant Southern Railway Company is guilty of a conversion of the hay, for that it exercised dominion over the same, without right whatever thereto, in making an unauthorized delivery. [See 1 Hutchison on Carriers (3 Ed.), Sec. 26.] No circumstances of fraud, imposition or mistake will excuse the common carrier for a delivery to the wrong person. However justifiable the delivery may seem to be, the law exacts of the carrier absolute certainty that

the person to whom it is made is the party rightfully entitled to the goods, and puts upon him the entire risk of mistakes in this respect. [See 2 Hutchinson on Carriers (3 Ed.), Sec. 668.] Here the bills of lading were issued "shipper's order, notify R. K. Gibson & Company," the brokers. Such signifies a shipment to plaintiff himself and that his brokers are to be notified only on the arrival of the consignment. Upon such notification it devolved upon the brokers to produce the bills of lading before they were authorized to receive delivery of the consignment as made to plaintiff himself or his order. To procure possession of the bills of lading, it devolved upon Gibson & Company, the brokers, to pay the draft of $250 annexed thereto. This was not done, it was said, for the reason the bills of lading and draft had not yet arrived. Be this as it may, defendant delivered the three cars of hay to R. K. Gibson & Company without the production of the bills of lading therefor, and in this a conversion appears. When such a course is taken as that pursued here, Mr. Hutchinson says, "The carrier will be liable to the consignor if loss ensue through a delivery of the goods to the drawee before he has paid the draft and obtained possession of the bill of lading from the bank." [See 1 Hutchinson on Carriers (3 Ed.), Sec. 183.]

But though such be true, plaintiff is not entitled to recover, if it appears conclusively that he has ratified the unauthorized act of his brokers through accepting and retaining a part or all of the benefits of the transaction. It is true R. K. Gibson & Company were not entitled to possession of the hay until they had first paid the draft and taken up the bills of landing for presentment to the defendant, for the consignment was made to plaintiff, that is "shipper's order," and not to them unconditionally. However, upon obtaining possession of the hay, the brokers, it seems, sought to dispose of it as best they could, in view of its inferior quality and to the best advantage of plaintiff, the owner.

By agreeing with Lewis & Leonhardt that the balance owing to them by plaintiff, amounting to $59.58, should be paid in the transaction, the brokers were enabled to dispose of the hay to that firm at thirteen dollars per ton. As a result of this transaction, $375.54 was realized for the three carloads of hay. Of this $59.58 was paid by the cancellation of plaintiff's account with Lewis & Leonhardt, the purchaser. R. K. Gibson & Company paid $297 freight charges against the consignment. $225 of this was freight accrued and it is said advanced on the hay at Harriman, Tennessee, when the second shipment was made. Seventy-two dollars of this amount was the freight charge for transportation from Harriman to Knoxville under the second shipment. According to these figures, a balance of $18.96 was due plaintiff, and for this amount the brokers sent him a check which was declined. Plaintiff wrote his brokers that the freight charge was entirely too high and objected to the settlement throughout. With this letter he returned their check for $18.96 to cover the balance, but he retained so much of the fruits of the settlement as appeared in the freight bills marked paid. These freight bills, so marked paid by the carrier and which plaintiff retained, evidenced the payment of the freight charges of $225 due on the hay for transportation to Harriman, Tennessee, and seventy-two dollars from Harriman forward to Knoxville. Plaintiff found fault with the calculation of the account, and Lewis & Leonhardt readily corrected the error by paying to the brokers $6.36. The brokers went about and procured from the railroad company a refund of seventy-two dollars local freight from Harriman, Tennessee, to Knoxville and obtained the benefit of the through rate from Herrick, Illinois, to Harriman, Tennessee, to include Knoxville as well. The brokers tendered this refund of freight, seventy-two dollars, the $6.36 received from Lewis & Leonhardt, together with the $18.96 represented in their prior

check to plaintiff, and he declined to accept it. But though such be true, plaintiff nevertheless retained the receipted freight bills as before and accepted the benefits thereof in the liquidation of the freight charged against the shipment from Herrick, Illinois, to Harriman, Tennessee. The evidence is conclusive on this question, for the plaintiff himself gives it in testimony.

There can be do doubt that the carrier has a lien on the goods for their carriage and for such advances as he has been required to make for the owner in order to further their transportation. [See 2 Hutchinson on Carriers (3 Ed.), Secs. 864, 865.] The evidence is conclusive that the freight was charged against and as plaintiff's witness says "followed" the shipment; moreover, the evidence reveals conclusively that these three cars had charged against them, by way of freight advanced at Harriman, $225. This amount of freight charges it appears had accrued and existed against the shipment as a lien for freight when the new or second consignment was made there, through the act of plaintiff's son in surrendering the original bills of lading and taking new ones which provided for a routing to Knoxville over defendant, Southern Railway, as the connecting and final carrier. This amount was paid by the brokers as freight charges and receipted bills therefor furnished to plaintiff. The freight so accrued between Herrick, Illinois, and Harriman, Tennessee, was incident to the first transaction—that is, the shipment of the hay under the first or prior bills of lading. The second shipment from Harriman to Knoxville was under an entirely new agreement, evidenced by three separate bills of lading then issued upon the surrender of the prior ones. It is under the latter shipment alone that defendant came into possession of the hay, and as final carrier was authorized to collect the full freight, including the amount accrued at Harriman, for the evidence is uniform and not denied that such amount was

there advanced by the connecting carrier. [See 2 Hutchinson on Carriers (3 Ed.), Sec. 867.]

The bills of lading issued at Harriman covering the second shipment contain a special contract incorporated in clause ten thereof, to the effect that in event of loss, the measure of recovery therefor should be the value of the hay at the time and place of shipment—that is, at Harriman. In this suit, plaintiff invokes the measure of recovery thus prescribed, and seeks the full value of the hay at Harriman at the time of shipment. It may be that, because of defendant's conversion, and in view of the stipulation in clause ten of the bills of lading issued at Harriman, providing that, in event of the loss of the hay, its value should be assessed at the time and place of the shipment, plaintiff is not liable for the freight charge from Harriman to Knoxville, as, in those circumstances, his claim for compensation would probably be first of that charge. But though such be true, notwithstanding the carrier's lien for freight, the amount so paid by the brokers for carriage to Harriman, Tennessee, $225, was a valid and subsisting claim against plaintiff in favor of the carrier and for which he was personally liable in a suit at law, and this, too, independent of the freight lien. [See 2 Hutchinson on Carriers (3 Ed.), Sec. 799.] This charge was a valid and subsisting indebtedness against plaintiff prior to and at the time the second shipment was made at Harriman. The mere fact that the carrier subsequently surrendered its claim to seventy-two dollars, additional freight, which plaintiff declined and by a readjustment under its through rating gave the shipment the benefit of through transportation to Knoxville for $225 is without influence in the case, for the evidence is clear that such was the rate charged and the amount accrued for transportation to Harriman. It is certain that $225 of freight charges had accrued on the shipment of

the three cars when the second consignment was made
at Harriman, Tennessee, and such amount, according
to the record, was advanced   thereon by the carrier.
This being true, a valid and subsisting indebtedness ap-
pears against plaintiff in that amount for freight ac-
crued at Harriman, and this was paid by his brokers
and the charge therefor cancelled when the freight bills
were marked paid by the carrier.   The bills revealed
the payment of this freight charge and so marked paid
were transmitted by Gibson & Company to plaintiff
along with their statement of the account on January
20, and these he accepted and retained.   This being
true, it conclusively appears that plaintiff ratified the
unauthorized act of his brokers in taking possession of
the hay without surrendering the bills of lading; for,
though a principal has an election either to repudiate
or to ratify an unauthorized act of one purporting to
act for him and on his behalf, he cannot ratify in part
or repudiate in part, but must either repudiate or rat-
ify the whole transaction. [See 31 Cyc., pp. 1257, 1258.]
Plaintiff was fully advised of all of the facts when he
received the receipted freight bills from his brokers
covering the freight charge accrued at Harriman, Ten-
nessee, and therefore must be treated as having ratified
the entire transaction, though he objected to other por-
tions thereof; for a ratification may be declared in
those cases where it appears the principal has received
benefits by accepting anything of value on the settle-
ment after being fully advised of all of the facts per-
taining to it. [See 31 Cyc., p. 1271.] While the principal
may repudiate a transaction made by one claiming to
represent him, but without authority, he must repudi-
ate the entire transaction and cannot repudiate a part
of it and accept the remainder.   [See Nichols, Shepard
& Co. v. Kern, 32 Mo. App. 1; Shinn v. Guyton, etc.
Mule Co., 109 Mo. App. 557, 83 S. W. 1015; see also
Watson v. Bigelow, 47 Mo. 413; Bohnmann v. Rossi, 73
Mo. App. 312; Huttig Sash & Door Co. v. Gitchell, 69

Mo. App. 115.] The doctrine of ratification obtains as well with respect to cases of conversion against carriers as elsewhere. It is the rule in such cases that if the consignor, after receiving information that the carrier has made delivery of the goods without requiring the reproduction of the bills of lading and with knowledge that payment of the draft has not been made, proceeds to accept benefits, as in part compensation for the goods, from the persons to whom the wrongful delivery was made by the carrier, and appropriates such benefits to his own use, he will be regarded as having abandoned his original purpose of requiring payment on delivery and to have ratified the delivery of the goods as made. [See 1 Hutchinson on Carriers (3 Ed.), Sec. 183; see, also, Ry. v. Kinchen & Co., 103 Ga. 186, 29 S. E. Rep. 816.]

Having accepted from his brokers, to whom the wrongful delivery was made, so much of the proceeds of the consignment as were applied in liquidation of the obligation of freight accrued against him at Harriman —that is, before the second shipment was made—plaintiff is estopped to proceed as for the conversion against defendant with a view of recovering the full value of the hay at the time and place of shipment — that is, Harriman—wholly relieved from all freight charges, and must be treated as having ratified the otherwise wrongful delivery. In this view, the judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.